**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:25-cv-00186-MR-WCM**

| | | |
|---|---|---|
| **DRIPP GRIPP, LLC,** | ) | |
| | ) | |
| **Plaintiff**, | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **CINCINNATI INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant**. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment [Doc. 51] and the Plaintiff's Motions for Partial Summary Judgment [Docs. 53, 55].

## I. PROCEDURAL BACKGROUND

On April 16, 2025, the Plaintiff Dripp Gripp, LLC initiated this action by filing a Complaint in Buncombe County Superior Court against the Defendant Cincinnati Insurance Company for breach of contract. [Doc. 1-1]. On June 20, 2025, the Defendant timely filed a Notice of Removal to this Court. [Doc. 1]. On April 28, 2026, with leave from the Magistrate Judge, the Plaintiff filed a First Amended Complaint asserting additional claims for unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*

("UDTPA") and breach of the covenant of good faith and fair dealing. [Doc. 47].

On June 9, 2026, the parties filed dispositive motions. The Defendant has moved for summary judgment on all claims. [Docs. 49, 51]. The Plaintiff has moved for partial summary judgment on the direct physical loss element of its breach of contract claim and on the Defendant's interior-rain limitation affirmative defense. [Docs. 53, 55].[1] All three motions have been fully briefed. [Docs. 52, 54, 56, 60, 62, 64, 66]. This matter is therefore ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

[1] The Pretrial Order and Case Management Plan in this case provides that "[b]riefs filed in support of motions may not exceed twenty-five (25) pages, unless some greater limit is granted by the Court upon motion for good cause." [Doc. 18 at 8]. As the Court has previously explained, the local rules and pretrial orders refer to "motions" in the plural because the Plaintiff and the Defendant may both file a motion for summary judgment and Daubert motions, thus allowing multiple possible motions. See Superguide Corp v. DirecTV Enters., Inc., No. CIV. 1:00CV144, 2008 WL 1944233, at *1 (W.D.N.C. Apr. 30, 2008). The appropriate mechanism to extend the page limit is to seek leave of the Court, as contemplated by the Order. The Plaintiff did not do so. Instead, the Plaintiff filed two separate motions for partial summary judgment on discrete issues of the breach of contract claim and a separate memorandum of law for each—one consisting of 24 pages and the other of 20 pages, totaling 44 pages of briefing for summary judgment on a single claim. "By dividing [its] motion in this manner," the Plaintiff has "evaded the intent" of the page-limit provision. Id. The Plaintiff is admonished that the Court does not condone such a loose interpretation of its Order. Nevertheless, the Court will proceed to consider the merits of the Plaintiff's motions.

as a matter of law." Fed. R. Civ. P. 56(a). "As the Supreme Court has observed, 'this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). "Facts are material when they might affect the outcome of the case, and a genuine issue exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." Ballengee v. CBS Broad., Inc., 968 F.3d 344, 349 (4th Cir. 2020) (quoting News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010)). When ruling on a motion for summary judgment, the Court does not "weigh the evidence or make credibility determinations." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016) (quoting Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 568-69 (4th Cir. 2015)).

Where, as here, the parties each move for summary judgment, the Court "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation

marks and citation omitted). In considering each of the motions for summary judgment, the Court must view the pleadings and materials presented in the "light most favorable" to the nonmovant and must "draw all reasonable inferences" in the nonmovant's favor. Adams v. UNC Wilmington, 640 F.3d 550, 556 (4th Cir. 2011). However, courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assocs., LLP, 213 F.3d 175, 180 (4th Cir. 2000).

## III. FACTUAL BACKGROUND

Based on the parties' forecasts of evidence, the following facts are undisputed.

The Plaintiff leases a commercial retail space in the Asheville Mall in which it operates its sneaker and apparel store. [Doc. 52-4: Answer at 1; 52-10: Plaintiff's Responses to Interrogatories at 4]. The Plaintiff purchased an insurance policy (the "Policy") from the Defendant, effective January 1, 2024 through January 1, 2027, which covers the Plaintiff's retail space. [Doc. 1-5: Policy at 1, 3].

In relevant part, the Policy grants and excludes coverage as follows:

> **A. Coverages**
>
> We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

Covered Property means Buildings as described under Paragraph **a.** below, Business Personal property as described under Paragraph **b.** below, or both . . .

. . . .

**b.** Business Personal Property located in or on the buildings or structures at the "premises" . . . including:

**(1)** Property you own that is used in your business;

**(2)** Personal Property of others that is in your care, custody or control or for which you are legally liable. . . .;

**(3)** The cost of labor, materials or services furnished or arranged by you on personal property of others;

**(4)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions . . .;

**(5)** Leased personal property used in your business for which you have a contractual responsibility to insure. Such leased property is not considered personal property of others in your care, custody or control; and

**(6)** Sales samples.

. . . .

3. **Covered Causes of Loss**

Direct "loss" unless the "loss" is excluded or limited . . . .

4. **Limitations**

**a.** We will not pay for "loss" to property as described and limited in **(1)** through **(6)** below. In addition, we will not pay for any "loss" that is a consequence of "loss" as described and limited in **(1)** through **(6)** below:

. . . .

**(5)** The interior of any building or structure or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters . . . .

. . . .

5. **Additional Coverages**

**a.** **Business Income**

**(1)** **Actual Loss Sustained Business Income**

. . . .

**(a)** We will pay for the actual loss of Business Income you sustain due

> to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. . . .
>
> . . . .

**H. Property Definitions**

> . . . .
>
> **14.** "Loss" means accidental physical loss or accidental physical damage.

[Id. at 14-17, 70: Policy at 4-7, 60].[2]

On September 27, 2024, Hurricane Helene devastated the Asheville area, causing the Asheville Mall to close for some period of time. [Doc. 54 at 3]. On September 30, the Plaintiff submitted a claim for coverage of business income losses under the Policy, and later, for business personal property losses due to water intrusion into its store. [See Doc. 54-5: Claims File at 1-2]. The Parties contest the cause of water intrusion and the extent of the Plaintiff's losses.

---

[2] Capitalized words and words in quotation marks are specifically defined in the Policy itself. [See, e.g., Doc. 1-5 at 14: Policy at 4 (stating that "phrases that appear in quotation marks have special meaning")]. As such, any words that are not capitalized or in quotation marks carry their ordinary meaning.

Following the Plaintiff's submission of its claim, the Defendant sent a building consultant, John Heitert, and two engineers, Jeffrey Sanchez and Colby Hietbrink, to inspect the Plaintiff's property and determine potential causes of loss. [Doc. 52-24 at 2: Heitert Dep. at 39:6-11; Doc. 52-25 at 3]. After his inspection on October 30, 2024, Heitert concluded that water did not enter through a "storm created opening." [Doc. 48: Answer at 8]. Following Sanchez's inspection on November 1, 2024, he also concluded in his written report that the water intrusion into the Plaintiff's store "was not the result of any storm-created openings in the roof's water-resistive membrane" but that a "potential source . . . was through two four-inch diameter, improperly flashed PVC chases that penetrate the roof." [Doc. 54-18: Sanchez's Rep. at 5-6].

On January 8, 2025, after Hietbrink's site-inspection but before receiving the written report, the Defendant notified the Plaintiff that "[t]here does not appear to be any coverage due to the limitation for the rainwater damage we understand caused the claim but are continuing under reservation and awaiting the engineering report to review before providing a formal position." [Doc. 56-1: Claims File at 1]. Hietbrink later concluded in his written report that the water intrusion "was attributed to excessive rain exposing deficiencies in the modified bitumen roof" and although there was

"slight leaking" from sprinkler heads in the Dillard's store above the Plaintiff's, "the quantity of water exiting the pipes . . . would not be expected to cause any appreciable amount of water intrusion into the space below." [Doc. 52-25 at 3].

While the inspections were underway, the Defendant referred the matter to subrogation counsel to evaluate any potential recovery. On January 9, 2025, the Defendant closed the subrogation file based on counsel's status report characterizing Heitbrink's inspection and stating as follows:

> [Heitbrink] determined that the most likely cause for the water infiltration into the insured[']s space during Hurricane Helene in late September, 2024 was a failure in the modified bitumen roof above the Dillard[']s space. . . .
>
> Because of the significant rainfall that accompanied Hurricane Helene, water likely ponded on the roof, and flowed down through the failed seams into the Dillard[']s space where it soaked through the floor. . . . Mr. Hietbrink also cannot rule out the possibility that winds accompanying the storm may have exacerbated the openings in the seams and/or helped push water into the failed seams.
>
> Mr. Hietbrink ruled out a sprinkler activation as the cause of the loss. . . .
>
> To the extent Mr. Hietbrink has been able to identify a cause, the mostly likely cause of the loss can be attributed to age related deterioration of the roof combined with an extreme weather event. To the extent the loss can be attributed to the insured[']s landlord for failing to maintain the roof, any claims against the landlord would be barred by a waiver of subrogation provision in

> the insured[']s lease. With regard to a claim against the entity responsible for installing the roof, we expect any claims against that entity (even if would identify it) would be barred by the statute of repose.

[Doc. 56-1: Claims File at 1-3]. During his deposition, Hietbrink confirmed counsel's characterization that rain likely ponded on the roof and infiltrated through the failed seams, and he stated "I guess, I couldn't rule out that" wind driving underneath the roof's seams "made that unadhered seam grow from 4 inches to 5 inches." [Doc. 54-19: Hietbrink Dep. at 6-9].

On February 3, 2025, the Defendant sent a letter to the Plaintiff denying coverage and attached the two engineers' reports. [Doc. 54-21]. The denial letter cited the Policy's granting provisions for business personal property and business incomes losses, the rain-water limitation, and utility-services and water-seepage exclusions. [Id. at 4-6]. It stated that the Plaintiff's business was without utilities and sustained water damages. [Id. at 2]. It also stated that the Defendants' engineers "confirmed the water damage was caused by a roof leak" through an unsealed seam, and quoted the engineers' written conclusions. [Id. at 2-3]. The letter concluded that there is no coverage for the Plaintiff's losses because the Policy excludes losses caused by the failure of utility services, long term water seepage, and rain water where the roof was not first damaged by a Covered Cause of Loss through which the rain entered. [Id. at 6].

## IV. DISCUSSION

### A. Plaintiff's Motions for Partial Summary Judgment

The Plaintiff contends that it is entitled to partial summary judgment on the direct physical loss element of its breach of contract claim on the ground of estoppel because the Defendant never questioned the presence or extent of direct physical loss and instructed the Plaintiff to dispose of the damaged property. [Doc. 54 at 1-2]. The Plaintiff also contends that it is entitled to partial summary judgment on the Defendant's rain-water limitation affirmative defense on the following grounds: (1) the Defendant cannot show that the intrusive water was rain, and (2) a Covered Cause of Loss—"an extreme weather event"—concurrently caused the loss. [Doc. 56 at 1-2]. After reviewing the record, the Court concludes that there are genuine disputes of material fact that preclude partial summary judgment on these issues. Accordingly, the Plaintiff's motions are denied.

### B. Defendant's Motion for Summary Judgment

District courts sitting in diversity must apply the forum state's choice-of-law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Here, North Carolina's choice-of-law rules dictate that North Carolina law applies because the Policy was delivered in North Carolina to the Plaintiff. Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000)

("With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract.").

### 1. Breach of Contract

The Defendant contends that it is entitled to summary judgment on the breach of contract claim on the following grounds: (1) the Plaintiff failed to comply with its duties in the event of loss which is a condition precedent to filing suit under the Policy, (2) the Plaintiff materially concealed and misrepresented facts concerning the claim, and (3) the Plaintiff failed to establish the existence of a Covered Cause of Loss. [Doc. 52 at 4]. Alternatively, the Defendant contends that it is entitled to partial summary judgment that (1) the Plaintiff's business income claim is not cognizable because the Plaintiff never presented a "quantified" business income claim, (2) the Plaintiff's claim for lost profits through its lease maturity in December 2031 is not recoverable under the Policy, and (3) recovery for any business personal property loss is limited to "properly supported Actual Cash Value." [Id. at 20-23]. After reviewing the record, the Court concludes that there are genuine disputes of material fact that preclude summary judgment on these

issues. Accordingly, the Defendant's motion for summary judgment on the breach of contract claim is denied.

### 2. Unfair and Deceptive Trade Practices

Under North Carolina law, a UDTPA claim requires proof of: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, that (3) proximately caused injury. Gray v. N. Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). North Carolina law establishes that "the business of insurance is unquestionably 'in commerce.'" DENC, LLC v. Philadelphia Indem. Ins. Co., 426 F. Supp. 3d 151, 156 (M.D.N.C. 2019), aff'd, 32 F.4th 38 (4th Cir. 2022) (internal quotation marks omitted) (quoting Chew v. Progressive Universal Ins. Co., No. 5:09-CV-351-FL, 2010 WL 4338352, at *9 & n.3 (E.D.N.C. Oct. 25, 2010)). "N.C. Gen. Stat. § 58-63-15 enumerates certain conduct as 'unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.'" G. Tyson Hopkins Assoc LLC v. Com. & Indus. Ins. Co., 822 F. Supp. 3d 614, 626 (E.D.N.C. 2026). "Conduct that violates § 58-63-15(11) constitutes a violation of [the UDTPA] as a matter of law." Id.

Here, the Plaintiff contends that the Defendant violated § 58-63-15(11) in the following manner: (1) by prematurely reaching a decision denying coverage before any reasonable investigation was completed (citing § 58-

63-15(11)(d)); (2) by failing to pay or even attempt a "prompt, fair and equitable" settlement (citing § 58-63-15(11)(f)); and (3) by misrepresenting both "pertinent facts" and "insurance policy provisions" and denying coverage based on a "storm-created opening" requirement that did not actually exist in the policy (citing § 58-63-15(11)(a), (n)). [See Doc. 62 at 24-25]. The Plaintiff, however, has failed to present a sufficient forecast of evidence from which a jury could reasonably conclude that the Defendant violated § 58-63-15(11) in any of these respects. The Plaintiff's claim under subsection (d) is belied by the undisputed forecast of evidence which shows that while the Defendant stated in its initial communication that "[t]here does not appear to be any coverage," it also clearly stated that it was continuing its investigation "under reservation and awaiting the engineering report to review *before providing a formal position*." [Doc. 56-1: Claims File at 1 (emphasis added)]. As for the alleged violation of subsection (f), the forecast of evidence, as discussed supra, demonstrates the existence of a legitimate claim dispute. Subsection (f) is not applicable "where an insurer 'ha[s] reasonable bases to challenge the validity of [the insured's] claim.'" G. Tyson, 822 F. Supp. 3d at 630 (quoting Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 234 (4th Cir. 2001)). Finally, the Plaintiff's assertions of misrepresentations in violation of subsections (a)

and (n) also fail, as the Plaintiff has failed to present a forecast of evidence from which a jury could conclude that the Defendant made any material misrepresentations in its communications to the Plaintiff with respect to any "pertinent facts" or relevant "policy provisions." Rather, the forecast of evidence shows that the "storm-created opening" verbiage of which the Plaintiff complains was merely the Defendant's way of describing the rainwater limitation's exception. The Defendant proceeded to investigate whether the roof may have first sustained storm damage, i.e., a "Covered Cause of Loss," that then created an opening in the roof through which the rainwater could have entered. Ultimately, the Defendant determined that the water intrusion was not caused by storm damage but rather by an unsealed roof seam, and therefore the water damage sustained by the Plaintiff was excepted from coverage.

For all of these reasons, the Court concludes that the Defendant is entitled to summary judgment on the Plaintiff's UDTPA claim.

### 3. Breach of Good Faith and Fair Dealing

"To prevail on a claim of bad faith in the insurance context, a complainant must establish that there was: 1) a refusal to pay after recognition of a valid claim; 2) 'bad faith'; and 3) 'aggravating or outrageous conduct.'" Blis Day Spa, LLC v. Hartford Ins. Grp., 427 F. Supp. 2d 621, 631

(W.D.N.C. 2006) (quoting Topsail Reef, 11 F. App'x. at 237). "'Bad faith' means not based on a legitimate, 'honest disagreement' as to the validity of the claim." Id. Aggravated conduct includes "fraud, malice, gross negligence, insult . . . willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." Id.

In support of its bad faith claim, the Plaintiff relies on the same forecast of evidence as it did in support of its UDTPA claim. [See Doc. 47 at ¶ 58; Doc. 62 at 25]. Accordingly, the Plaintiff's bad faith claim fails for the same reasons. Further, "[s]ummary judgment is appropriate in favor of the insurer on a bad faith refusal to settle claim when [a] coverage issue [is] reasonably in dispute." Blis Day Spa, 427 F. Supp. 2d at 632 (alterations in original). As the Court has already addressed, the forecast of evidence demonstrates that there is a reasonable dispute regarding the validity of the Plaintiff's claim. Therefore, the Defendant is entitled to summary judgment on the bad faith claim.

### C. Conclusion

In sum, the Court concludes that there are genuine disputes of material facts that preclude summary judgment on the Plaintiff's breach of contract claim. The Court further concludes that the undisputed forecast of evidence

shows the Defendant did not commit unfair or deceptive trade practices during the adjustment of the Plaintiff's claim and did not unlawfully refuse to pay the claim. Accordingly, the Court grants summary judgment in favor of the Defendant on the Plaintiff's UDTPA and breach of good faith and fair dealing claims, which will be dismissed with prejudice.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 51] is hereby **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted as to the Plaintiff's UDTPA and breach of good faith and fair dealing claims, and those claims are dismissed with prejudice. In all other respects, the Motion is denied. This matter will proceed to trial on the Plaintiff's claim for breach of contract.

**IT IS FURTHER ORDERED** that the Plaintiff's Motions for Partial Summary Judgment [Docs. 53, 55] are hereby **DENIED**.

**IT IS SO ORDERED**.

Signed: November 5, 2026

Martin Reidinger
Chief United States District Judge